UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

David J. Scott,

          Plaintiff,

v.

Wells Fargo Bank, N.A.,
Wachovia Mortgage Corporation,
World Savings, Inc.,

          Defendants.

**ORDER & MEMORANDUM OF LAW**
Civil File No. 10-3368 (MJD/AJB)

---

Benjamin R. Skjold, Christopher P. Parrington, and Ryan P. Myers, Skjold-Barthel, PA, Counsel for Plaintiff.

Charles F. Webber and Ellen B. Silverman, Faegre & Benson LLP, Counsel for Defendants.

---

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Temporary Injunction. [Docket No. 16] Plaintiff seeks to toll the redemption period with regard to Plaintiff's foreclosed property. Oral argument was heard Thursday, January 27, 2011.

## II. FACTUAL BACKGROUND

1

**A. Parties and Mortgage Transactions**

On August 26, 2003, Plaintiff David Scott entered into two mortgages with Defendant World Savings Bank, Inc. ("World Savings"). One of the mortgages was for a property located at 2236 State Avenue in Anoka, Minnesota. The principal amount of the State Avenue mortgage was $162,400. The second mortgage was for a property located at 302 Clay Street in Anoka, Minnesota. The principal amount of the Clay Street mortgage was $161,000.

In December 2007 World Savings was merged into Wachovia Bank, N.A. In November 2009, Wachovia Bank, N.A., merged into Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). As part of this merger, Defendant Wachovia Mortgage was merged into Wells Fargo.

**B. Plaintiff's Default and Contact with Wachovia Mortgage**

In 2009, Plaintiff's income fell considerably. Eventually, Plaintiff could no longer make payments on the mortgages, and he defaulted on both mortgages. Plaintiff contacted Wachovia Mortgage to notify the Defendant about the Plaintiff's situation and to request any information on the possibility of restructuring the mortgages. Wachovia Mortgage, by letters dated December 28, 2009 ("December 28 Letter") and January 6, 2010, (January 6 Letter), relating to

2

the State Avenue and Clay Street mortgages respectively, requested that Plaintiff submit certain financial documents to Wachovia Mortgage.

### 1. State Avenue Property

On December 29, 2009 Wachovia Mortgage sent Plaintiff a letter, ("December 29 Letter") which notified Plaintiff that Wachovia Mortgage was "unable to adjust the terms of [Plaintiff's] mortgage through the Home Affordable Modification Program ("HAMP") because…[t]he residence is not owner-occupied." Additionally, although the December 29 Letter informed Plaintiff that he did not qualify for assistance under HAMP, the letter stated that the loan "may still be eligible for other loss mitigation options with Wachovia Mortgage." Further, the letter said "[t]o have the loan reviewed for other loss mitigation options, please contact Wachovia Mortgage at 1-888-565-1422." The Plaintiff sent Wachovia Mortgage the documents requested in the December 29 Letter in order to have his loan reviewed for these other options.

On January 15, 2010, Wachovia Mortgage sent Plaintiff a letter ("January 15 Letter") which stated that "the file has been closed and we are unable to process your request due to non-receipt of required documentation or information. If this loan is delinquent and/or in foreclosure, Wachovia will

3

continue to move forward with collection efforts and any right and/or remedies it may have." Plaintiff contacted Wachovia Mortgage to determine the status of his loan modification request, and Plaintiff was told to resubmit the documents Plaintiff had submitted in response to the December 29 Letter. On February 16, 2010, Wachovia Mortgage sent Plaintiff a letter which once again informed Plaintiff that he was ineligible for assistance under HAMP, but that the loan may be eligible for other loss mitigation options. Plaintiff contacted Wachovia in order to learn about his eligibility for these other loss mitigation options and Plaintiff was informed that his modification file had been closed. Plaintiff once again contacted Wachovia Mortgage and resubmitted the documents he had already submitted. Plaintiff was again informed that he was ineligible for a HAMP modification but that he may be eligible for other loss mitigation options. Plaintiff again tried to contact Wachovia Mortgage to discuss the other loss mitigation options, but never was able to ascertain if he was eligible for these other loan modification options.

  2. **Clay Street Property**

Plaintiff went through a similar process with Wachovia Mortgage with regard to the Clay Street Property. In response to the January 6 Letter, Plaintiff

submitted the requested documents to Wachovia Mortgage.  Wachovia sent Plaintiff a letter on January 12, 2010, stating that it had not received the documents requested in the January 6 Letter.  Plaintiff resent these documents, and attempted to learn about his modification request.  On March 17, 2010, Wachovia Mortgage sent Plaintiff a letter which stated that the Clay Street property had "been approved for commencement of foreclosure action which may cause [Plaintiff] to lose [his] property and any owner's equity."

On March 18, 2010, Plaintiff received two letters from Wachovia Mortgage.  The first letter was the same as the January 6 Letter, and requested that the Plaintiff submit certain financial documents to Wachovia Mortgage.  The second letter informed Plaintiff that he did not qualify for assistance under HAMP with regard to the Clay Street property, but that Plaintiff may still be eligible for other loss mitigation options.  Plaintiff once again contacted Wachovia Mortgage and asked to be considered for these other options, and resubmitted his financial documents.  On March 24, 2010 Plaintiff received a letter informing him that Wachovia Mortgage had not received Plaintiff's documents.  Wachovia Mortgage never provided Plaintiff with any information concerning his modification request.

At oral argument, Plaintiff's counsel stated that the Clay Street property is not the Plaintiff's home, but rather is an investment property that the Plaintiff owned in order to generate income.

### 3. Further Contact with Wachovia Mortgage

On April 30, 2010, Plaintiff sent two letters to Wachovia Mortgage, each entitled "**ACTUAL NOTICE TO RESCIND; NOTICE PURSUANT TO RESPA (QWR); & REQUEST FOR ACCOUNTING**," which sought all the documents which referenced the mortgages. On May 6, 2010, Wachovia Mortgage sent a response to Plaintiff with regard to the Clay Street property which included a copy of that mortgage, but did not respond concerning the State Avenue property. Wachovia then informed Plaintiff that it had engaged the services of Wilford & Geske, P.A. to commence foreclosure proceedings with regard to the Clay Street property. On May 10, 2010 Wachovia Mortgage informed Plaintiff that it had engaged the services of Shapiro & Zielke, L.L.P. to commence foreclosure proceedings with regard to the State Avenue property.

### C. Foreclosure and Sale of Clay Street Property

Ultimately, Wells Fargo began foreclosure proceedings on the Clay Street property. Wells Fargo has not at this time commenced foreclosure proceedings

with regard to the State Avenue property. The foreclosure sale of the Clay Street property was advertised for six weeks, between May 28, 2010 and July 2, 2010. The sale was originally scheduled for July 12, 2010, but was postponed to August 11, 2010. At the time of the sheriff's sale the property was occupied by one tenant, Don Yates, who was personally served with the Notice of Mortgage Foreclosure Sale and accompanying documents. When the sale was first noticed the amount due on the mortgage was $174,629.95. At the public auction, Wells Fargo purchased the property for $106,126. The redemption period for this property ends on February 11, 2011.

**D. Procedural History**

This case was originally filed in Anoka County District Court. It was removed to this Court on August 6, 2010. [Docket No. 1] Subsequent to removal, Plaintiff amended his Complaint on September 24, 2010. The Amended Complaint alleges Count I: Accounting, Count II: Breach of Mortgagee Duty in Violation of Minn. Stat. § 580.11, Count III: Breach of Good Faith and Fair Dealing, Count IV: Fraud, Count V: Negligent Misrepresentation, and Count VI: Injunctive Relief. [Docket No. 2] On December 22, 2010, Plaintiff filed a Motion

for Temporary Injunction, seeking to toll the redemption period on the Clay Street property. [Docket No. 16]

## III. DISCUSSION

### A. Injunction Tolling Redemption Period for State Avenue Property

Although this case involves both the State Avenue and the Clay Street property, because the State Avenue property has not been foreclosed on, there is no redemption period to toll. Accordingly, Plaintiff's motion only seeks an injunction tolling the redemption period with regard to the Clay Street property.

### B. Standard for Temporary Injunction

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions and temporary restraining orders. Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm suffered by the moving party if the injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits. Id.

"[A] preliminary injunction motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987). "[W]here the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Dataphase Sys., Inc., 640 F.2d at 113.

**C. Likelihood of Success on the Merits**

Plaintiff has brought a number of claims against Defendants, but for the purposes of this motion Plaintiff directs the Court to Count II: Breach of Mortgagee Duty and Count V: Negligent Misrepresentation.

    **1.    Breach of Mortgagee Duty**

Plaintiff alleges that the Defendants in this case breached their fiduciary duty to act fairly and deal with the Plaintiff in good faith with regard to the foreclosure of the Clay Street property in violation of Minn. Stat. § 580.11. This statute, which relates to foreclosures sales by advertisement, states that the "mortgagee, the mortgagee's assignee, or the legal representative of either or

9

both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale." Minn. Stat. § 580.11.

Plaintiff cites to Sprague Nat'l Bank v. Dotty, 415 N.W.2d 725 (Minn. Ct. App. 1987) to strengthen his assertions. In Sprague, the Minnesota Court of Appeals reversed a trial court's granting of summary judgment because there was "evidence demonstrating genuine issue of material fact regarding Sprague's failure to act in good faith during the foreclosure proceedings." Id. at 727. The court found that because the lender purchased the property for "almost $100,000 less than the loan amount, and 30-50% less than the appraised values" and because "the appellants were never notified of Sprague's intent to bid lower than the remaining balance of the loan," there were genuine issues of fact with regard to the lender's good faith during the foreclosure proceedings. Id.

Plaintiff's understanding of Sprague, however, is misguided. The court in Sprague did not impose a general mortgagee duty on the lender. Rather, the court found that where there was evidence that a lender acted in bad faith in purchasing the property at a foreclosure sale, summary judgment is inappropriate. Id. Chapter 580 discusses procedural requirements concerning foreclosures by advertisement. The statute itself does not impose any fiduciary

duty on the mortgagee nor does it deal with a mortgagee's actions prior to foreclosure. Plaintiff has not made any allegations that Wells Fargo did not act fairly in purchasing the Clay Street property at the advertised foreclosure sale. Accordingly, Plaintiff is not likely to succeed on the merits of this claim.

### 2. Negligent Misrepresentation

In defining the elements of negligent misrepresentation involving damages for pecuniary loss the Minnesota Supreme Court has adopted the definition found in the Restatement (Second) of Torts § 552. <u>Bonhiver v. Graff</u>, 248 N.W.2d 291, 298-99 (Minn. 1976). The Restatement (Second) of Torts § 552 states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communication the information.

Plaintiff contends that the Defendants negligently misrepresented the nature of the review of the documents which Plaintiff submitted to determine whether he qualified for any other loss mitigation options. Plaintiff argues that, in numerous letters, Wachovia Mortgage stated that it would review Plaintiff's documents and inform him of any possible modification options. Plaintiff asserts

11

that instead of informing him of his eligibility for these other options, Defendants simply continued to send the Plaintiff form letters encouraging him to contact Wachovia Mortgage for more information.

Plaintiff is not likely to succeed on the merits of his negligent misrepresentation claim. Plaintiff relies on the statement contained in many of letters Wachovia Mortgage sent to Plaintiff, which states:

> Even though you are ineligible for assistance under the Home Affordable Modification Program ("HAMP"), the loan may still be eligible for other loss mitigation options with Wachovia Mortgage, such as a payment plan, other in-house modification programs, short sale, or deed-in-lieu of foreclosure. To have the loan reviewed for other loss mitigation options, please contact Wachovia Mortgage at 1-888-565-1422.

Initially, the Court notes that this statement merely proclaims that Plaintiff was ineligible for modification under HAMP and that he may be eligible for other options. This statement does not promise Plaintiff that he would qualify for any modification options. It simply states that Plaintiff might qualify for these options. This statement does state "[t]o have the loan reviewed for other loss mitigation options, please contact Wachovia Mortgage at 1-888-565-1422." However, there are no discernable damages from Plaintiff's reliance on this statement. Plaintiff had already defaulted on his loans before this statement was

12

made. Defendants never made any promises that they would modify Plaintiff's loan. Additionally, Defendants had no legal obligation to modify Plaintiff's loan. It certainly may have been frustrating for Plaintiff to not receive any information about his eligibility for these other options, however, since Defendants never promised that they would modify Plaintiff's loan, and were under no obligation to modify Plaintiff's loan, Plaintiff is unlikely to succeed on the merits of his claim for negligent misrepresentation.

### D. Irreparable Harm

Plaintiff argues that he will suffer irreparable harm in this case, because he will lose his home without ever finding out whether he could have qualified for a loan modification as the Defendants stated was possible in their many letters. Plaintiff contends that the loss of property is a harm for which money damages may not be adequate, because real property is unique. See O'Hagan v. United States, 86 F.3d 776, 783 (8th Cir. 1996) (citations omitted). The Court agrees that the loss of property constitutes irreparable harm. Even though the property is an investment property, due to the unique nature of real property, money damages would not be an adequate remedy for the loss of the property. Accordingly, the court finds this factor weighs in favor of issuing an injunction.

### E. Balance of the Harms

The Court finds that the balance of the harm weighs in favor of the Defendant. If the Court were to issue an injunction, Defendants would be delayed in taking possession of the Clay Street property and would be forced to bear the risk that the value of the property would decrease before they would be able to sell the property. Although Plaintiff will suffer some harm by the Defendants taking possession of the property, this harm is minimal considering the Plaintiff cannot establish a likelihood of success on the merits and Defendants are simply enforcing their contractual rights.

### F. Public Interest

The public interest does not support issuing an injunction to toll the redemption period of a foreclosed property where the Plaintiff has not established a likelihood of success on the merits. The Plaintiff entered into a contract with the Defendants, and Plaintiff defaulted on that contract. Defendants are attempting to enforce their rights under that contract. Given that Plaintiff is unable to establish a likelihood of success on the merits, the public interest weighs in favor of enforcing the contract between Plaintiff and Defendants.

## IV. CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Plaintiff's Motion for Temporary Injunction [Docket No. 16] is **DENIED**.


Dated:   February 2, 2011          <u>s/ Michael J. Davis</u>
                                   Michael J. Davis
                                   Chief Judge
                                   United States District Court