# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

David J. Scott,

               Plaintiff,

v.

Wells Fargo Bank, N.A.,
Wachovia Mortgage Corporation,
World Savings, Inc.,

               Defendants.

**MEMORANDUM OF LAW &
ORDER**
Civil File No. 10-3368 (MJD/SER)

---

Benjamin R. Skjold, Christopher P. Parrington, Patrick D. Boyle, and Ryan P. Myers, Skjold Parrington, PA, Counsel for Plaintiff.

Charles F. Webber and Ellen B. Silverman, Faegre & Benson LLP, Counsel for Defendants.

---

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment [Docket No. 32].  Oral argument was heard Friday, July 22, 2011.  For the reasons articulated below, the Court grants Defendants' motion.

## II.    FACTUAL BACKGROUND

### A. Parties and Mortgage Transactions

On August 26, 2003, Plaintiff David Scott entered into two mortgages with Defendant World Savings Bank, Inc. ("World Savings").  One of the mortgages was for a property located at 2236 State Avenue in Anoka, Minnesota ("State Avenue Mortgage").  The principal amount of the State Avenue mortgage was $162,400.  The second mortgage was for a property located at 302 Clay Street in Anoka, Minnesota ("Clay Street Mortgage").  The principal amount of the Clay Street Mortgage was $161,000.

In December 2007, World Savings was merged into Wachovia Bank, FSB ("Wachovia").  On November 1, 2009, Wachovia merged into Wells Fargo Bank, N.A. ("Wells Fargo"), a national banking association.

## B.  Plaintiff's Default and Contact with Wachovia

In 2009, Plaintiff's income fell considerably.  Eventually, Plaintiff could no longer make payments on the mortgages, and he defaulted on both mortgages.  Plaintiff contacted Wachovia to notify Defendants about his situation and to request any information on the possibility of restructuring the mortgages.  In December 2009, Plaintiff applied to Wachovia for a loan modification on both mortgages.  During the initial interview for each property, Plaintiff informed Wachovia that both properties were rental properties.  Wachovia, by letters

dated December 28, 2009, and January 6, 2010, relating to the State Avenue and

Clay Street Mortgages respectively, requested that Plaintiff submit certain

financial documents to Wachovia in relation to Wachovia's Mortgage Assistance

Plan ("MAP").

**1.      State Avenue Property**

On December 29, 2009, Wachovia sent Plaintiff a letter which notified

Plaintiff that Wachovia was "unable to adjust the terms of [Plaintiff's] mortgage

through the Home Affordable Modification Program ("HAMP") because . . . [t]he

residence is not owner-occupied."  Additionally, although the December 29

Letter informed Plaintiff that he did not qualify for assistance under the Home

Affordable Modification Program ("HAMP"), the letter stated that the loan "may

still be eligible for other loss mitigation options with Wachovia Mortgage."

Subsequently, Plaintiff sent Wachovia the documents requested in the December

28 Letter in order to have his loan reviewed for these other options.

On January 15, 2010, Plaintiff received a letter by which Wachovia

informed Plaintiff that, in relation to his loan modification application, "the file

has been closed and we are unable to process your request due to non-receipt of

required documentation or information."  Plaintiff states that he received this

letter despite having remitted all the documents requests in the December 28 letter.

Plaintiff subsequently contacted Wachovia to learn about the status of his request for a modification of the State Avenue Mortgage.  Plaintiff was told to resubmit the documents he had submitted in response to the December 28 Letter. On January 26, 2010, Wachovia sent Plaintiff a letter which was identical to the December 28 letter, requesting that Plaintiff submit documents in relation to a MAP modification.  Plaintiff submitted the documents requested by the January 26 letter.

On February 16, 2010, Wachovia sent Plaintiff a letter, which once again informed Plaintiff that he was ineligible for assistance under HAMP because the State Avenue property was not Plaintiff's primary residence.  This letter again stated that Plaintiff may be eligible for other loss mitigation options.  Wachovia sent a duplicate of this letter to Plaintiff on February 23, 2010.

### 2.   Clay Street Property

Plaintiff went through a similar process with Wachovia in relation to the Clay Street property.  In response to the January 6 Letter, Plaintiff submitted the requested documents to Wachovia.  Wachovia sent Plaintiff a letter on January

12, 2010, stating that it had not received the documents requested in the January 6 Letter.  This letter specifically stated "[w]e have not received documentation needed to finalize your pending Mortgage Assistance Plan loan modification . . . ."  Plaintiff avers that he submitted every document which had been requested over the phone or in writing.  On February 19, 2010, Plaintiff received a letter stating that his file had been closed due to the non-receipt of certain documents.

On February 22, 2010, Plaintiff received a letter requesting submission of certain documents in relation to his MAP application.  On the following day, February 23, 2010, Plaintiff received a letter informing Plaintiff that he was not eligible for a HAMP modification because his monthly housing expenses were less than 31% of his calculated gross monthly income of $11,006.92.  This letter stated that Plaintiff "may still be eligible for other loss mitigation options . . . such as . . . other in-house modification programs."

On March 17, 2010, Wachovia sent Plaintiff a letter which stated that the Clay Street property had "been approved for commencement of foreclosure action which may cause [Plaintiff] to lose [his] property and any owner's equity."

On March 18, 2010, Plaintiff received two letters from Wachovia.  One of the letters was the same as the February 23 letter.  The second letter informed Plaintiff that, in relation to a MAP modification, Plaintiff needed to submit certain documents.  On March 24, 2010, Plaintiff again received a letter informing him that Wachovia had "not received documentation needed to finalize your pending Mortgage Assistance Plan loan modification."  The letter requested that Plaintiff submit "all documents related to current sources of income immediately or complete the 4506T and Authorization to Release Information forms."

On April 23, 2010, Wachovia sent a letter to Plaintiff stating that Plaintiff was not eligible for a MAP modification on the Clay Street property because his income was determined to be sufficient to make the loan payments.  This letter once again stated that Plaintiff "may still be eligible for . . . other in-house modification programs."

### 3.    Foreclosure Proceedings

On May 10, 2010, Wilford & Geske, P.A. informed Plaintiff that they had been retained to commence foreclosure proceedings on the Clay Street property. On June 2, 2010, Wilford & Geske, P.A. sent Plaintiff a Notice of Mortgage Foreclosure Sale, which set the sheriff's sale for July 12, 2010, at 10:00 a.m.  The

foreclosure sale was postponed to August 11, 2010, on which date Defendants

purchased the Clay Street property.

On May 19, 2010, Shapiro & Zielke, L.L.P., sent notice to Plaintiff that it

had been retained to commence foreclosure proceedings on the State Avenue

property.

### C. Procedural History

On July 16, 2010, Plaintiff sued Wells Fargo Bank, N.A., Wachovia

Mortgage Corp., and World Savings, Inc. in Anoka County District Court.  The

case was removed to this Court on August 6, 2010.  [Docket No. 1].  Subsequent

to removal, Plaintiff amended his Complaint on September 24, 2010.  The

Amended Complaint alleges six counts against Defendants, Count I: Accounting,

Count II: Breach of Mortgagee Duty in Violation of Minn. Stat. § 580.11, Count

III: Breach of Good Faith and Fair Dealing, Count IV: Fraud, Count V: Negligent

Misrepresentation, and Count VI: Injunctive Relief.  [Docket No. 2].  On

December 22, 2010, Plaintiff filed a Motion for Temporary Injunction, seeking to

toll the redemption period on the Clay Street property.  [Docket No. 16].  The

Court denied Plaintiff's Motion for Temporary Injunction by an Order dated

February 2, 2011.  [Docket No. 31].  On May 15, 2011, Defendants filed a Motion

for Summary Judgment.  [Docket No. 32].

## III.    DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no genuine dispute

as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Summary judgment is only appropriate when "there is no dispute of fact and

where there exists only one conclusion."  Crawford v. Runyon, 37 F.3d 1338, 1341

(8th Cir. 1994) (citation omitted).

"Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Factual disputes that

are irrelevant or unnecessary will not be counted. Id.  "[I]n ruling on a motion for

summary judgment, the nonmoving party's evidence 'is to be believed, and all

justifiable inferences are to be drawn in [that party's] favor.'" <u>Hunt v. Cromartie</u>,

526 U.S. 541, 552 (1999).

## B.  Preemption of Plaintiff's Claims

### 1. Federal Preemption

> The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law.  State law is preempted when Congress expressly prohibits state regulation, when Congress implicitly leaves no room for state involvement by pervasively occupying a field of regulation, and when state law directly conflicts with federal law.  Federal regulations also may preempt state law, if the agency intends its regulations to have preemptive effect, and the agency is acting within the scope of its delegated authority.

<u>Chapman v. Lab One</u>, 390 F.3d 620, 624-25 (8th Cir. 2004) (citations omitted).

### 2. Applicable Preemptive Act

Initially, the Court, in order to make a determination concerning the

preemption of Plaintiff's claims, must decide which act governs the alleged

actions of Defendants.  Defendants argue that all of Plaintiff's claims are

preempted by the Home Owners' Loan Act ("HOLA").  <u>See</u> 12 U.S.C. §§ 1461-

1470.  Through HOLA, Congress established the Office of Thrift Supervision

("OTS").  12 U.S.C. § 1462a.  HOLA gives the OTS authority to prescribe

regulations "to provide for the organization, incorporation, examination,

operation, and regulation of . . . Federal savings associations . . . ."  <u>Id.</u> § 1464.

The preemptive authority of HOLA is explained in 12 C.F.R. § 560.2, which

states:

> OTS is authorized to promulgate regulations that preempt state laws
> affecting the operations of federal savings associations. . . . OTS
> hereby occupies the entire field of lending regulation for federal
> savings associations. . . .  Accordingly, federal savings associations
> may extend credit as authorized under federal law . . . without
> regard to state laws purporting to regulate or otherwise affect their
> credit activities.

World Savings and Wachovia, prior to its merger with Wells Fargo, were federal

savings associations regulated by the OTS, and governed by HOLA.  Wells Fargo

however, is a federally chartered national bank.  Moreover, when Wachovia

merged into Wells Fargo, Wachovia converted into a national bank.  Unlike

federally chartered savings associations, federally chartered banks are regulated

by the Office of the Comptroller of Currency ("OCC") and are governed by the

National Bank Act ("NBA").  12 U.S.C. § 1 <u>et</u> <u>seq</u>.  Plaintiff argues that

Defendants' actions are governed by the NBA.

    This issue has not been addressed by the Eighth Circuit, but has been

analyzed in several courts in the Ninth Circuit.  Defendants direct the Court to

<u>DeLeon v. Wells Fargo Bank, N.A.,</u> 729 F. Supp. 2d. 1119, 1126 (N.D. Cal. 2010),

where the court stated that although World Savings merged into Wachovia which subsequently merged into Wells Fargo "the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association."  Other courts have found HOLA applicable to claims made against Wells Fargo despite the fact that Wells Fargo is a national bank which is not governed by the OTS and HOLA, because the original lender was a federal savings bank.  See Haggarty v. Wells Fargo Bank, N.A., No. C 10-02146 CRB, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011) (asserting that HOLA applied to Wells Fargo because the loan's originator was a federal savings bank).

However, other courts in the Ninth Circuit have expressed doubt over making such a blanket statement concerning the applicability of HOLA in relation to a national bank which has acquired a federal savings association covered by the OTS regulations.  In Valtierra v. Wells Fargo Bank, N.A., No. Civ-F-10-0849 AWI GSA, 2011 WL 590596, (E.D. Cal. Feb. 10, 2011), the court stated that the case law on this matter was "mixed."  Id. at *3.  The court ultimately stated that it was clear that where the original lending institution was a federal savings association all actions surrounding the original obtaining of the

mortgage were covered by HOLA.  Id. at *4.  The court, however, refused at the

motion to dismiss stage to find that "[c]auses of action arising on or after

November 1, 2009" were preempted.  Id.  In making this decision, the court

noted that the best supported rule is for courts to look "to see whether the

alleged violations took place when the banking entity was covered by HOLA."

Id.

The Court agrees with this reasoning and in the case at bar looks to

whether the alleged violations took place while the entity in question was

covered by HOLA.  Title 12 C.F.R. § 560.2(a) states that the "OTS is authorized to

promulgate regulations that preempt laws affecting the operations of federal

savings associations."  Following the merger on November 1, 2009, Wachovia

ceased to be a federal savings association.  Any actions subsequently taken with

regard to Plaintiff's mortgages were actions taken by a national bank, whose

dealings are governed by the NBA as opposed to HOLA.  Accordingly, the Court

finds that HOLA only applies to Plaintiff's claims arising from incidents which

occurred prior to November 1, 2009, when Wachovia merged into Wells Fargo

and converted into a national bank, and the NBA applies to the incidents which

occurred after the merger.  Since Plaintiff's claims all stem from actions relating

to his attempt to modify his mortgages, which occurred after the merger, the

Court will analyze the issue of preemption through the NBA, as opposed to

HOLA.

### 3. National Bank Act Preemption

The preemptive nature of the NBA with regard to real estate lending is set

forth in 12 C.F.R. § 34.4.  Subdivision (a) of this regulation lists fourteen areas in

which national banks may make real estate loans without regard to state law

limitations.  12 C.F.R. § 34.4(a).  However, § 34.4(b) sets forth that "[s]tate laws on

the following subjects are not inconsistent with the real estate lending powers of

national banks and apply to national banks to the extent that they only

incidentally affect the exercise of national banks' real estate lending powers: (1)

Contracts; (2) Torts; . . . (6) Acquisition and transfer of real property. . . . " Id. §

34.4(b).  Notably,  § 34.4 does not contain any language indicating that the

regulations promulgated in accordance with the NBA are intended to occupy the

entire field, unlike the regulations under HOLA.  See Id. § 560.2.

The Supreme Court has stated that "[s]tates are permitted to regulate the

activities of national banks where doing so does not prevent or significantly

interfere with the national bank's or the national bank regulator's exercise of its

power."   Watters v. Wachovia Bank, N.A., 550 U.S. 1, 12 (2007).  Furthermore,

other courts, in determining the preemptive effect of the NBA, have held that

claims under "laws of general application which merely require all business

(including banks) to refrain from misrepresentations and abide by contracts and

representations to customers do not impair a bank's ability to exercise its lending

powers."   Jefferson v. Chase Home Fin., No. C 06-6510 THE, 2008 WL 1883484, at

*10 (N.D. Cal. Apr. 29, 2008).

Defendants argue that § 34.4(a)(10) expressly preempts all state law which

affect the "[p]rocessing origination, servicing, sale or purchase of, or investment

or participation in, mortgages."  12 C.F.R § 34.4(a)(10).  Defendant contends that

all of Plaintiff's claims deal with the terms and servicing of Plaintiff's mortgage,

and thus are preempted by the NBA.  Contrary to this argument, the Court finds

that Plaintiff's claims all stem from the theory that Defendants acted in a

fraudulent manner in dealing with Plaintiff's attempts to modify his mortgages.

Plaintiff's claims arise from laws which are generally applicable to all businesses,

and as such these claims only incidentally affect Defendants' lending powers.

See Baldanzi v. WFC Holdings Corp., No. 07 Civ. 9551 (LTS)(GWG), 2008 WL

4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("In contrast to findings of federal

preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted.").  Thus, because Plaintiff's claims do not interfere with Wells Fargo's ability to exercise its power the Court finds that they are not preempted by the NBA.

### C.  Plaintiff's Claims

#### 1. Count I: Accounting

In Count I of his Amended Complaint, Plaintiff asserts a claim for accounting.  (Am. Compl. ¶¶ 73-79.)  "An accounting is an extraordinary remedy usually available only when legal remedies are inadequate."  <u>Border State Bank, N.A. v. AgCountry Farm Credit Servs.</u>, 535 F.3d 779, 784 (8th Cir. 2008).  By way of his claim for Accounting, Plaintiff contends that he is "entitled to an Order requiring a detailed accounting of Defendant[s'] activities relating to Plaintiff's request for a forbearance or loan modification, including, without limitation, an Order releasing the entire contents [of] Plaintiff's loan file from Defendant[s'] custody."  (<u>Id.</u> ¶ 79.)  This claim must fail, because Plaintiff's "claim for accounting amounts to standard discovery requests, governed by the Federal Rules of Civil Procedure."  <u>Cox v. Mortg. Elec. Registration Sys., Inc.</u>, Civil No.

10-4626 (DSD/SER), 2011 WL 2600700, at *3 (D. Minn. June 30, 2011).

Accordingly, "an adequate remedy at law is available, and dismissal is

warranted." Id.  Additionally, this claim must be dismissed because it is

premised on Defendants' liability in Counts II-V.  Since the Court will dismiss

those claims, Plaintiff's claim for an accounting must fail.  Id.

### 2. Count II: Breach of Mortgagee Duty Under Minn. Stat. § 580.11

In Count II of the Amended Complaint, Plaintiff alleges that the

Defendants breached their fiduciary duty to act fairly and deal with the Plaintiff

in good faith with regard to the foreclosure of the Clay Street property in

violation of Minn. Stat. § 580.11.  (Am. Compl. ¶¶ 81-82.)  This statute, which

relates to foreclosure sales by advertisement, states that the "mortgagee, the

mortgagee's assignee, or the legal representative of either or both, may fairly and

in good faith purchase the premises so advertised, or any part thereof, at such

sale."  Minn. Stat. § 580.11.

As part of its Order denying Plaintiff's TRO motion, the Court stated that

Minn. Stat. § 580.11 "does not impose any fiduciary duty on the mortgagee nor

does it deal with a mortgagee's actions prior to foreclosure."  (Docket No. 31 at

10-11.)  Plaintiff argues that although Minn. Stat. § 580.11 does not create a

fiduciary duty or deal with the mortgagee's actions prior to foreclosure,

Defendants nevertheless violated this statute because they did not act fairly and

in good faith when they foreclosed on the Clay Street property.  In particular,

Plaintiff argues that Defendants changed the date of the foreclosure without

informing Plaintiff of this fact, in violation of Minn. Stat. § 580.07.  This statute

states that when the mortgagee postpones the foreclosure:

> The party requesting postponement must, at the party's expense: (1) publish, only once, a notice of the postponement and the rescheduled date of the sale, if known, as soon as practicable, in the newspaper in which the notice under section 580.03 was published; and (2) send by first class mail to the occupant, postmarked within three business days of the postponed sale, notice: (i) of the postponement; and (ii) if known, of the rescheduled date of the sale and the date on or before which the mortgagor must vacate the property if the sheriff's sale is not further postponed.

Minn. Stat. § 580.07.  Plaintiff asserts that although Defendants met the first

requirement of Minn. Stat. § 580.07 by publishing notice of the postponement,

there is no evidence that notice of the postponement was ever mailed to him.

Accordingly, Plaintiff contends that Defendants' violation of the notice provision

means that they breached their duty to act fairly and in good faith when

foreclosing on the Clay Street property.

Plaintiff's reliance on Minn. Stat. § 580.07 is misplaced.  Minn. Stat. § 580.07 requires that notice of a postponement must be sent to the occupant of the property.  It is undisputed that Plaintiff was not the occupant of the Clay Street property.  Minnesota courts have found that persons who are not occupants of the premises are not entitled to notice of a foreclosure sale.  See Deutsche Bank Trust Co. Americas v. Souza, No. A10-190, 2010 WL 3958671, at *4 (Minn. Ct. App. Oct. 12, 2010) (holding that mortgager was not entitled to service of notice of a foreclosure sale when he was not the occupant of the property, pursuant to Minn. Stat. § 580.03).  Since Plaintiff was not an occupant of the property, he was not entitled to any notice of the postponement under Minn. Stat. § 580.07.  Thus, Defendants are entitled to summary judgment on Plaintiff's claim of breach of mortgagee duty.

### 3. Count III: Breach of Covenant of Good Faith and Fair Dealing

In Count III of Plaintiff's Amended Complaint he alleges that Defendants breached the implied covenant of good faith and fair dealing "by informing Plaintiff, that Defendants would work with Plaintiff to resolve Plaintiff's minor deficiency on the Mortgages, and then failing to respond to Plaintiff's repeated

requests for information regarding the status of his offers to remedy the deficiency." (Am. Compl. ¶ 86.)

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not unjustifiably hinder the other party's performance of the contract." In re Hennepin Cnty. 1986 Recycling Bond Litigation, 540 N.W.2d 494, 502 (Minn. 1995) (citation omitted). "Actions are done in good faith when done honestly, whether it be negligently or not." Prairie Island Indian Cmty. v. Minn. Dep't of Pub. Safety, 658 N.W.2d 876, 889 (Minn. Ct. App. 2003) (citation omitted). "[A]ctions are done in bad faith when a party's refusal to fulfill some duty or contractual obligation [is] based on an ulterior motive, not an honest mistake regarding one's rights or duties." Id. (citation omitted). Furthermore, "[u]nder Minnesota law, 'a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim.'" Cox, 2011 WL 2600700, at *4 (quoting Orthomet, Inc. v. A.B. Med., Inc., 990 F.2d 387, 392 (8th Cir. 1993)).

Plaintiff's breach of good faith and fair dealing claim presents the Court with a similar set of circumstances as the recent decision in Cox. In Cox, the court dismissed plaintiffs' good faith and fair dealing claim because plaintiffs did

not assert an underlying breach of contract claim and because plaintiffs did not

cite any contractual duty that the defendants failed to perform with bad faith or

an ulterior motive.  Id.

For these very same reasons, Plaintiff's good faith and fair dealing claim in

the case at hand must be dismissed.  Plaintiff, like the plaintiff in Cox, has not

asserted a breach of contract claim.  Furthermore, Plaintiff has not identified any

contractual duty which Defendants have failed to perform with bad faith or

ulterior motive.  Plaintiff, in his opposition, identifies four ways in which he

believes Defendants breach the implied covenant of good faith and fair dealing.

First, Plaintiff argues that Defendants mischaracterized Plaintiff's loan

application as one for HAMP, despite the information provided by Plaintiff.

Second, Plaintiff contends that Defendants continually omitted the fact that IRS

Form 4506T was required for a complete modification application.  Third,

Plaintiff suggests that Defendants committed fraud by stating on several

occasions that other in-house modification options were available, even though

no such programs existed.  Fourth, Plaintiff argues that Defendants committed

fraud by calculating his income and housing expenses incorrectly.  However, the

only contracts to which the parties have agreed are the notes and mortgages, and

these contracts do not provide Plaintiff with the right to modify his loans.

Accordingly, Plaintiff's arguments are without merit, because since there was no

contractual duty for Defendants to modify Plaintiff's loan, Plaintiff cannot show

that Defendants acted with an ulterior motive in refusing to perform a

contractual duty.  Thus, this claim must be dismissed.

### 4. Count IV: Fraud

According to Minnesota law, for a plaintiff to prevail on a fraud claim he

must show:

> (1) there was a false representation by a party of a past or existing
> material fact susceptible of knowledge; (2) made with knowledge of
> the falsity of the representation or made as of the party's own
> knowledge without knowing whether it was true or false; (3) with
> the intention to induce another to act in reliance thereon; (4) that the
> representation caused the other party to act in reliance thereon; and
> (5) that the party suffer[ed] pecuniary damage as a result of the
> reliance.

Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C., 736 N.W.2d 313, 318 (Minn. 2007)

(citation omitted).

Count IV of Plaintiff's Amended Complaint alleges that Defendants

committed fraud by making the following representations to Plaintiff:

> a. Defendants represented to Plaintiff that, although Plaintiff did
>    not qualify for a modification through the Home Affordable
>    Modification Program, that the Mortgages "may still be eligible

for other loss mitigation options with Wachovia Mortgage such as a payment plan, other in-house modification programs, short sale, or deed-in-lieu of foreclosure."

b. Defendants further represented that they would review documents submitted by Plaintiff to determine whether either of Plaintiff's Mortgages qualified for any of the "other loss mitigation options with Wachovia Mortgage, such as a payment plan, other in-house modification programs, short sale, or deed-in-lieu of foreclosure."

(Am. Compl. ¶ 89.)

As pled in the Amended Complaint, Plaintiff's fraud claim must fail, because Plaintiff does not identify any false statement made by Defendants. The statement made in the HAMP denial letters that although Plaintiff was not eligible for a HAMP modification he still may be eligible for other loss mitigation options is not a false representation. This statement makes no promises about a loan modification, but rather merely informs Plaintiff that he may be eligible for other options, which Plaintiff may have been. Furthermore, Defendants' specific statement in the HAMP denial letters that there are other in-house modification options is not a false representation, because of the existence of Defendants' in-house MAP modification program. Accordingly, Plaintiff's fraud claim based on the first representation identified in the Amended Complaint must be dismissed.

Additionally, the evidence presented to the Court does not demonstrate that Defendants had no intention of reviewing Plaintiff's documents, but rather shows that Defendants did in fact review Plaintiff's documents in order to determine that Plaintiff was ineligible for loan modification under both HAMP and MAP.  In this regard, the second representation identified by Plaintiff in his Amended Complaint also cannot sustain a fraud claim, because Plaintiff has not presented evidence which establishes a genuine dispute of fact with regard to whether or not Defendants reviewed Plaintiff's documents.

Plaintiff has, in his opposition to Defendants' motion, identified four other fraudulent representations made by Defendants.  First, Plaintiff argues that Defendants mischaracterized Plaintiff's loan application as one for HAMP, despite the fact that Plaintiff informed Defendants that both properties were rental properties.  Second, Plaintiff contends that Defendants continually omitted the fact that IRS Form 4506T was required for a complete modification application.  Third, Plaintiff suggests that Defendants committed fraud by stating that other in-house modification options were available in a letter denying a MAP application, because there were no other in-house modification programs other than MAP.  Fourth, Plaintiff argues that Defendants committed fraud by

calculating his income and housing expenses incorrectly.  Plaintiff asserts that

due to all of these fraudulent representations he chose to pursue modification to

settle his contractual dispute to his own detriment.

Plaintiff's fraud claim based on these representations must fail, however,

because Plaintiff failed to plead these allegations with particularity, as required

by Federal Rule of Civil Procedure 9(b).  To meet the standards of Rule 9(b):

> the complaint must allege such matters as the time, place, and
> contents of false representations, as well as the identity of the person
> making the representation and what was obtained or given up
> thereby.  In other words, the complaint must plead the who, what,
> where, when, and how of the alleged fraud.

Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (citations omitted).

"This requirement is designed to enable defendants to respond specifically, at an

early stage of the case, to potentially damaging allegations of immoral or

criminal conduct."  BJS Health Sys. V. Columbia Cas. Co., 478 F.3d 908, 917 (8th

Cir. 2007) (citation omitted).  Although failure to comply with Rule 9(b) is

usually dealt with through a motion to dismiss, "[a] district court may enter

summary judgment dismissing a complaint alleging fraud if the complaint fails

to satisfy the requirements of Rule 9(b)."  Murr Plumbing, Inc. v. Scherer Bros.

Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995).

Plaintiff's original Complaint does not assert any of these four alleged representations.  After removal to this Court, Plaintiff filed an Amended Complaint, which also does not assert any of these representations.  When Plaintiff brought a motion for temporary injunction, five months after bringing his claims, he made no mention of these representations.  At no time during discovery did Plaintiff seek to amend his complaint to include these representations.  Instead, Plaintiff for the first time mentioned these representations in his opposition to Defendants' motion for summary judgment.  Accordingly, Defendants were not notified of these allegedly fraudulent representations until receiving Plaintiff's opposition.  By failing to plead these representations, or even raise them until his opposition to Defendants' motion for summary judgment, Plaintiff prevented Defendants from specifically responding, at an early stage of the case, to the allegations of fraud stemming from these newly raised representations, due simply to the fact that Defendants were unaware of these allegations until they were raised in Plaintiff's opposition.

In essence, by raising these representations in his opposition brief, Plaintiff is attempting to amend his Amended Complaint to include new allegations of fraud.  Such action is impermissible.  <u>Morgan Distrib. Co., Inc. v. Unidynamic</u>

Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may

not be amended by the briefs in opposition to a motion to dismiss.  To hold

otherwise would mean that a party could unilaterally amend a complaint at will,

even without filing an amendment, . . . simply by raising a point in a brief.")

(internal citations omitted); see also Spectra Merch. Int'l, Inc. v. Euler ACI

Collection Servs., Inc., No. 03 C 899, 2004 WL 1393600, at *6 n. 4, (N.D. Ill. June

18, 2004) ("Just as a plaintiff cannot amend his complaint through arguments in

his brief in opposition to a motion for summary judgment, the plaintiff cannot

use a brief to present new allegations or particulars of fraud not contained in the

complaint") (citations omitted).  Plaintiff cannot, late into the litigation of this

matter, assert unpled allegations in an effort to avoid summary judgment,

especially given the requirement that allegations of fraud be pled with

particularity.  See Rodgers v. City of Des Moines, 435 F.3d 904, 910 (8th Cir. 2006)

("[T]he district court properly refused to consider unpled allegations" raised in

opposition to a motion for summary judgment).  Consequently, the Court will

dismiss this claim.

### 5. Count V: Negligent Misrepresentation

A person makes a negligent misrepresentation when:

> (1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009)

(citation omitted).  "Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation, is considered an allegation of fraud which must be pled with particularity."  Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (citing Juster Steel v. Carlson Co., 366 N.W.2d 616, 618 (Minn. Ct. App. 1985)).  Accordingly, the requirements of Rule 9(b) are applicable to claims of negligent misrepresentation.

For the same reasons as discussed above, in relation to Plaintiff's fraud claim, the Court will grant Defendants' motion in relation to Plaintiff's claim for negligent misrepresentation.  Count V of Plaintiff's Amended Complaint identifies the same representations as referenced in his fraud claim.  As discussed above, those representations were not false.  Once again, in his opposition, Plaintiff points to the four newly raised representations in an effort to avoid summary judgment on his negligent misrepresentation claim.  However, the

reasoning of the Court in relation to the dismissal of Plaintiff's fraud claim based on these representations is applicable to Plaintiff's claim of negligent misrepresentation based on these same representations.  Plaintiff's failure to raise these allegedly negligent misrepresentations at any time before submitting his opposition brief fails to comply with the particularity requirements of Rule 9(b), and thus, the Court will dismiss Plaintiff's negligent misrepresentation claim.

### 6. Count VI: Injunctive Relief

Count VI of Plaintiff's Amended Complaint alleges that since he does not have an adequate remedy at law he is entitled to temporary and permanent injunctive relief staying the foreclosure proceedings.  (Am. Compl. ¶¶ 100-02).  "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted."  Ryan v. Hennepin Cnty., 29 N.W.2d 385, 387 (Minn. 1947) (citation omitted).  Since the Court has dismissed all of Plaintiff's other claims, the Court dismisses Plaintiff's claim for injunctive relief.

## IV.   CONCLUSION

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

Defendants' Motion for Summary Judgment [Docket No. 32] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date:   August 27, 2011                         s/ Michael J. Davis
                                                Michael J. Davis
                                                Chief Judge
                                                United States District Court